United States Court of Appeals,

Fifth Circuit.

No. 93-4839

Summary Calendar.

Jimmie Joseph JOHNSON, Plaintiff,

v.

AMOCO PRODUCTION CO., Defendant,

AMOCO PRODUCTION CO., Third-Party Plaintiff-Appellee,

v.

TECHNICAL COMPRESSION SERVICES, INC., Third-Party Defendant-Appellant.

Nov. 3, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

This third-party indemnity action arises out of an injury that occurred at Amoco Production Co.'s ("Amoco") Chalybeat Springs oil and gas production facility. The injured party and plaintiff in the principal action, Jimmie Joseph Johnson, brought a tort claim in diversity against Amoco, the Third Party Plaintiff-Appellee in the instant case. Amoco in turn filed a third-party demand against the injured party's asserted employer, Third-Party Defendant-Appellant Technical Compression Services, Inc. ("TCS"). The third party demand was premised on the notion that TCS owed Amoco defense and indemnification for its employee, Johnson, according to the master contract between TCS and Amoco. Amoco argued that Johnson was an employee of TCS as defined in the indemnification provision in that master contract, and that the Louisiana Oilfield Anti-Indemnity Act ("LOAIA")[1] did not render the indemnification provision unenforceable. The district court agreed and entered summary judgment for Amoco. Finding no error, we affirm.

I

---

[1] LA.REV.STAT.ANN. § 9:2780 (West 1991).

FACTS AND PROCEEDINGS

In September, 1990, Johnson was injured while installing and adjusting an engine and compressor at Amoco's facility in Chalybeat Springs, Arkansas.[2] The Amoco facility where Johnson was injured processes oil and gas produced from thirty-one Amoco wells located nearby. All thirty-one wells are connected to that facility by a gathering system consisting of one gathering line into which each well connects. At the facility, that line feeds into a separator which separates the oil from the gas. The gas then goes through an inlet scrubber, then through a glycol unit, and finally through a compressor at the compressor station where Johnson was injured. The compressed gas leaves the facility in a transmission pipeline that feeds into a United Gas Pipeline trunk line approximately ten miles away.

The work in which Johnson was engaged at the Amoco facility was undertaken by TCS pursuant to a work order issued by Amoco to rebuild and install an engine and compressor. This work order in turn was governed by a master contract between Amoco and TCS entered into in May, 1984.[3] This contract includes an indemnification provision that provides in pertinent part:

> Contractor [TCS] assumes all liability for and hereby agrees to defend, indemnify and hold Amoco, its joint owner or owners, if any, and their insurers, harmless from and against any and all losses, costs, expenses and causes of action, including attorney's fees and court costs, for injuries to and death of Contractor's and its Subcontractor's employees, arising out of, incident to, or in connection with any and all operations under this contract ...

After it was sued by Johnson, Amoco impleaded TCS, maintaining that, as Johnson was an employee of TCS within the meaning of the indemnification provision, TCS was liable for defense and indemnification under that provision. In the main action—Johnson's tort claim—Amoco successfully argued to the district court that it (Amoco) was Johnson's *statutory* employer, thereby barring that claim under Louisiana's worker's compensation law.[4]

---

[2]Even though the injury in question occurred at a facility located outside Louisiana, both of the parties and the district court consistently applied Louisiana law, and none ever questioned its applicability. We are therefore not inclined to raise that point sua sponte.

[3]TCS argued to the district court that the master contract did not apply to this work order. The district court concluded otherwise, however, and TCS does not challenge this conclusion on appeal.

[4]*See,* LA.REV.STAT.ANN. §§ 23:1021-1379 (West 1985 & Supp.1993).

Having succeeded in avoiding tort liability to Johnson,[5] Amoco next moved for summary judgment on its indemnity and defense claim against TCS. In opposing that motion, TCS advanced two defenses.[6] First, TCS argued that Amoco's status as Johnson's statutory employer excluded him from coverage under the indemnity agreement as it only applies to "employees" of TCS. Second, TCS claimed that the LOAIA rendered the indemnity provision unenforceable as applied to Johnson's claim because the work order that Johnson was executing fell within the coverage of that act. According to TCS, the work order for equipment at the compressor station "pertained to a well" as required by the LOAIA.

The district court disagreed with TCS's contentions. The court first reasoned that statutorily identifying a party as an employer for tort immunity purposes in a state's worker's compensation system does not necessarily control the definition of the term "employee" as it is used in a contract. Rather, the court looked to the contractual intent of the parties and concluded that the indemnity provision unambiguously applied to TCS's actual or payroll employees, among whom Johnson was one. Next, the court concluded that the contract at issue—the work order to rebuild and replace the engine and compressor located at the compressor station within Amoco's facility—did not "pertain to a well" because the gas at that point could no longer be identified with a particular well. By the time the gas reached the compressor station it had been commingled and undergone substantial processing to prepare it for transmission and distribution, so that it was no longer identifiable with any given well. Thus, concluded the district court, the indemnification provision of the contract was not rendered unenforceable by the LOAIA. Accordingly, the district court entered summary judgement for Amoco for its costs and expenses in defending against the suit by Johnson, which totaled $27,932.65. TCS timely appealed.

II

STANDARD OF REVIEW

---

[5]The district court entered summary judgment dismissing Johnson's claim. Johnson appealed this judgment, which is being considered by another panel of this court.

[6]TCS also argued that the master contract containing the indemnification provision did not apply to the work order. As noted earlier, TCS does not pursue this contention on appeal.

We review the district court's grant of summary judgment by "reviewing the record under the same standards which guided the district court."[7]  A grant of summary judgment is proper when no issue of material fact exists that would necessitate a trial.[8]  We affirm a grant of summary judgment when " "we are convinced, after an independent review of the record, that "there is no genuine issue of material fact" and that the movant is "entitled to a judgment as a matter of law." ' "[9]  In determining whether the grant was proper, all fact questions are viewed in the light most favorable to the nonmovant.  Questions of law, however, are decided as they are outside of the summary judgment context:  *de novo.*[10]

## III

## DISCUSSION

The facts underlying this indemnity claim are not in dispute.  Summary judgment is thus an appropriate vehicle with which to dispose of this claim.  On appeal, TCS contends that the district court erred in concluding that Johnson was an "employee" of TCS under the indemnity agreement.  TCS alternatively contends that, even if Johnson were such an employee, the district court erred in concluding that the LOAIA did not render this agreement unenforceable as applied to Johnson's claim.  We analyze each contention in turn.

A. *Meaning of "Employee" in the Master Contract*

TCS argues that Amoco's status as Johnson's "statutory employer" removes Johnson from the ambit of the indemnification provision.  According to TCS, the term "employees" used in this provision is not sufficiently clear to put TCS on notice that it may be liable for the employee of another company, even though this person is denominated an "employee" of that other company only for purposes of the statutory bar in worker's compensation, and even though this person remains on

---

[7]*Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

[8]*Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986);  *see* FED.R.CIV.P. 56(c).

[9]*Walker,* 853 F.2d at 358 (quoting *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987) (quoting FED.R.CIV.P. 56(c))).

[10]*Id.*

TCS's payroll. We disagree.

A person may be a statutory employee of one company under Louisiana's worker's compensation laws while remaining the "common law" or payroll employee of another.[11] Johnson has been classified under statutory law as Amoco's "employee" only for the narrow purpose of limiting Amoco's tort liability. A classification under this statutory scheme of risk-avoidance has little if any relevance to the interpretation of a contractual term. Rather, as the district court correctly noted, that term is interpreted by ascertaining the common intent of the parties.[12]

To ascertain and thereby effectuate that common intent we examine each provision in a contract in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[13] We interpret these terms of the contract (unless they are technical terms or terms of art) by giving them their generally prevailing meaning.[14] And when the terms of a contract are clear and explicit and lead to no absurd consequences, no further inquiry may be made in search of the parties' intent.[15]

The term "employee" used in the master contract between TCS and Amoco is clear and has a generally prevailing meaning: an employee is one who works for another for a salary or wages.[16]

---

[11]*Billiot v. Police Jury for Jefferson Parish,* 308 So.2d 478, 479 (La.App.1975) (noting that statutory employer may be entitled to indemnity from employee's payroll employer); *see also, Guillot v. Guillot,* 445 So.2d 1270, 1274 (La.App.1984) (noting that an employee may have both a statutory and a regular employer).

[12]*See,* LA.CIV.CODE ANN. art. 2045 (West 1993).

[13]LA.CIV.CODE ANN. art. 2050 (West 1993).

As noted earlier, both parties agree that Louisiana law governs the enforceability of the indemnification provision of the master contract and Amoco has asserted, uncontested by TCS, that Louisiana law governs the construction of this contract. We thus construe this contract according to the interpretative provisions contained in the Louisiana Civil Code.

[14]LA.CIV.CODE ANN. art. 2047 (West 1993).

[15]LA.CIV.CODE ANN. art. 2046 (West 1993).

[16]*E.g.,* BLACK'S LAW DICTIONARY 525 (6th Ed.1990) (defining employee as: "One who works for an employer; a person working for salary or wages"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 743 (1986) (defining employee as "one employed by another usually in a position below the executive level and usually for wages").

The most frequently encountered confirming criteria of this relationship is the identity of the one who directs and controls the work and the worker, an issue not disputed in this case as TCS has admitted that Johnson was allegedly injured while working in the course and scope of his duties as a field mechanic for TCS. Moreover, TCS's master contract with Amoco mandated that Amoco would have no direction or control over TCS or its employees other than in the results to be obtained.

TCS's contention that worker's compensation law somehow limits the scope of the term "employee" fails, not only because this statutory scheme has little relevance to manifesting contractual intent on issues other than worker's compensation, but also because the master contract, when read as a whole, suggests a different result. Paragraph six of this contract states that "anyone used or employed by Contractor [TCS]" shall *not* be "deemed to be the agent, servant, or representative of Amoco." Simply put, this paragraph unequivocally declares that TCS's employees shall remain TCS's employees for purposes of TCS's contractual relationship with Amoco. Under that relationship, TCS's employees are those who are "used or employed" by TCS. Accordingly, we conclude, as did the district court, that Johnson—who was on the payroll of TCS, and was presumably under TCS's supervision and control, while engaged in performing TCS's repair and installation work order with Amoco—was the employee of TCS for purposes of the indemnification provision.

B. *Applicability of the Louisiana Oilfield Anti-Indemnity Act*

In *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.* [*Transco (Lloyd's* ) ][17] we articulated our test for determining the applicability of the LOAIA. We stated that the Act only applies to a contract if it "pertains to a well" and is related to the "exploration, development, production or transportation of oil, gas, or water."[18] We concluded that a contract does not "pertain to a well," and hence can contain an indemnity provision, if the gas "can no longer be identified with a particular well" or if the gas becomes so "fundamentally changed [by] processing, commingling, or preparing it for distribution to its ultimate end user" that it can no longer properly be attributed to a

---

[17]953 F.2d 985 (5th Cir.1992).

[18]*Id.* at 991.

particular well.[19]

In the instant case TCS received a work order to rebuild and install an engine and compressor at the gas compressor station within Amoco's Chalybeat Springs facility. This facility processes oil and gas produced from thirty-one Amoco wells located nearby; the oil and gas is delivered commingled to the facility in a single gathering line. The compressor station is used to send completely processed gas from the facility in a distribution line that runs to a United Gas Pipeline transmission line approximately ten miles away. Long before the gas reaches the compressor station it has been commingled in the gathering line with oil and gas from all other wells in the field, then separated from the oil and other liquid hydrocarbons, and finally run through an inlet scrubber and glycol unit. Under these facts it is clear that, at least by the time the gas reaches the compressor station where Johnson was working when he was injured, it can no longer be identified with a particular well. As such, TCS's work on the compressor station cannot "pertain to a well."

TCS attempts to avoid this conclusion by likening Amoco's Chalybeat facility to an offshore oil platform, which, it claims, is to be treated as one well under the LOAIA, even though multiple wells flow products into such a facility.[20] This analogy fails. The offshore platform thus analogized is typically a production facility that might have been part of an exploration facility or might have been constructed separately after any number of exploration and development wells had been drilled; the costs of offshore operations are such that in either case, a single platform is intended to produce from as broad an area as possible. When the platform itself is initially the nucleus of and necessary to exploratory and developmental drilling, it may be fairly characterized as "a well" for purposes of the LOAIA. In contrast, the onshore Chalybeat facility is unrelated to the operations that discovered, developed, and defined the onshore field through individually drilled and completed wells. The facility is used exclusively to receive the collective products of field production, process them, and, inter alia, prepare the dry, processed gas for transportation; it is totally independent of the drilling

---

[19]*Id.* at 994.

[20]*See Id.* at 995 n. 40 (noting that under certain circumstances several wells on an offshore platform may be treated as one well for purposes of the LOAIA).

for and extracting of petroleum.  Each well surrounding this facility contains its own equipment and structures for either extracting the hydrocarbons from the producing subsurface strata and bringing them to the surface, or receiving them there.  As such, each of these wells is properly characterized as an individual one for purposes of the LOAIA.

IV

CONCLUSION

TCS entered into a contract obligating itself to indemnify and defend Amoco for any losses or expenses occasioned by injury to its "employees".  As we conclude that Johnson was an employee of TCS for purposes of that contract at the time he was injured, and that the Louisiana Oilfield Anti-Indemnity Act does not apply here to render the indemnification provision of that contract unenforceable, we agree with the district court that the contractual indemnification provision governs Johnson's claims against Amoco.  Consequently, that court's judgment imposing liability on TCS for expenses incurred by Amoco in defending against Johnson's claims is

AFFIRMED.