| ALVIN JONES | * | NO. 2024-CA-0837 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| BUCK KREIHS MARINE | * | |
| REPAIR, L.L.C. | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2011-00359, DIVISION "F-14"
Honorable Jennifer M Medley
\* \* \* \* \* \*
**Chief Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Chief Judge Roland L. Belsome, Judge Sandra Cabrina
Jenkins, Judge Paula A. Brown)

**BROWN, J., DISSENTS AND ASSIGNS REASONS**

Clay J. Garside
Joel R. Waltzer
WALTZER WIYGUL & GARSIDE, LLC
3201 General DeGaulle Drive, Suite 200
New Orleans, LA 70114

      COUNSEL FOR PLAINTIFFS/APPELLEES

Bradley J. Schlotterer
Sean T. McLaughlin
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/THIRD-PARTY PLAINTIFF APPELLEE

Michael W. McMahon
Kirk N. Aurandt
DAIGLE FISSE & KESSENICH, PLC
P.O. Box 5350
Covington, LA 70434-5350

      COUNSEL FOR THIRD-PARTY DEFENDANTS/APPELLANTS

                **AFFIRMED**
                **JUNE 11, 2025**

Appellants U.S. United Ocean Services, LLC ("UOS") and United Bulk Terminals Davant, LLC ("UBT") appeal the trial court's September 26, 2024 judgment granting summary judgment in favor of Buck Kreihs Marine Repair, LLC ("Buck Kreihs") on its third-party demand for contractual defense and indemnity. For the reasons that follow, we affirm the trial court's judgment.

## *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

This appeal involves a dispute over which of two contracts governs the parties' obligations, each of which contains materially different indemnity provisions. Litigation in this case spans over a decade. Therefore, the facts and procedural history discussed herein is limited to that which is relevant to the issues raised on appeal.

The underlying complaint arises from injuries Alvin Jones sustained during a project to replace an industrial weight scale at a coal yard owned and operated by UBT, located on the Mississippi River in Davant, Louisiana. UBT's principal

business is the storage and handling of energy-related commodities, including coal. The scale replacement project was performed by Buck Kreihs, a marine and industrial repair company that provides installation, overhaul, and repair services to river-based industries. Buck Kreihs had an ongoing business relationship with both UBT and UOS, a related company that owns and operates ocean-going vessels responsible for transporting cargo, including coal from UBT's facility, to other foreign entities. UBT and UOS are both subsidiaries of United Marine Group, LLC ("UMG").

On February 19, 2010, during the scale replacement project, Mr. Jones was struck by a heavy box containing weight scale parts. Mr. Jones was paralyzed as a result of the impact, and on January 13, 2011, Mr. Jones and his wife filed suit against Buck Kreihs for damages. In September 2013, Mr. Jones died from complications related to his injuries.[1]

Following Mr. Jones' accident, American Longshore Mutual Association, Ltd. ("ALMA"), the workers' compensation carrier for UBT, paid benefits and a lump-sum settlement to Plaintiffs in excess of $2.7 million. ALMA subsequently intervened in the litigation, seeking reimbursement against Buck Kreihs for the payments it made to Plaintiffs. ALMA claimed that under a 2008 General Services Agreement ("2008 Agreement"), Buck Kreihs had agreed to fully indemnify UBT for any injuries arising out of Buck Kreihs' work, except in cases where UBT was solely at fault.

---

[1] The complaint was amended in February 2014 to include the plaintiffs' children and assert actions for wrongful death and survival.

Buck Kreihs subsequently filed a third-party demand against UBT and UOS, claiming that a 2010 General Services Agreement ("2010 Agreement") executed between Buck Kreihs and UOS, applies to the claims arising from Mr. Jones' accident. Buck Kreihs claimed that according to the 2010 Agreement UBT and UOS owe a duty to indemnify and defend against Plaintiffs' liability claims and ALMA's reimbursement claims.

After settlement efforts proved unsuccessful, Buck Kreihs filed a motion for summary judgment on the same grounds. A hearing on the motion was held, and after taking the matter under advisement, the trial court granted summary judgment in Buck Kreihs' favor. The trial court concluded that the 2010 Agreement was the operative contract and therefore required UBT and UOS to defend and indemnify Buck Kreihs. UBT and UOS thereafter filed this timely appeal.

### STANDARD OF REVIEW

UBT and UOS (collectively "Appellants") raise three assignments of error, claiming the trial court erred when it found that: (1) the 2010 Agreement applied instead of the 2008 Agreement between UBT and Buck Kreihs; (2) the 2011 Amendment to the 2010 Agreement was legally valid and enforceable; and (3) no genuine issues of material fact existed. The question central to this appeal is whether the 2008 Agreement or the 2010 Agreement is the operative contract governing the indemnity obligations in this litigation.

"An indemnity agreement is a specialized form of contract." *Hall v. Malone*, 12-0264, p. 4 (La. App. 4 Cir. 11/7/12), 104 So.3d 593, 596 (citing *Meloy v.*

3

*Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987). "The interpretation of contract provisions is typically a matter of law that properly may be decided on motion for summary judgment." *Robin v. Wong*, 07-0547, p. 3 (La. App. 4 Cir. 10/24/07), 971 So.2d 386, 388 (citations omitted).

"Appellate courts review the grant or denial of a summary judgment motion *de novo* using the identical criteria that trial courts use to determine whether summary judgment is proper." *Crosby v. Sahuque Realty Co., Inc.*, 24-0029, p. 8 (La. App. 4 Cir. 8/13/24), 398 So.3d 700, 708 (citing *Planchard v. New Hotel Monteleone, LLC*, 21-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

### *DISCUSSION*

In analyzing contracts, certain rules of construction apply. A contract serves as the governing law between the parties. La. C.C. art. 1983. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. "Meaning and intent of

4

the parties to a [contract] is ordinarily determined from the instrument's four corners and extrinsic evidence is inadmissible to either explain or to contradict the instrument's terms." *Lalla v. Calamar, N.V.*, 08-0952, p. 8 (La. App. 4 Cir. 2/11/09), 5 So.3d 927, 932 (citation omitted). A contract must be interpreted as a whole and to give meaning to all its terms. "One provision of the contract should not be construed separately at the expense of disregarding other provisions." *Village Shopping Ctr. P'ship v. Kimble Dev., LLC*, 18-740, p. 6 (La. App. 5 Cir. 4/24/19), 271 So.3d 376, 382 (citing La. C.C. art. 2050).

UOS and UBT argue that the 2008 Agreement applies to the work performed at the time of Mr. Jones' injury because that agreement was executed between Buck Kreihs and UBT, the accident occurred at UBT's facility, and it was UBT that hired Buck Kreihs to install the scale replacement. Appellants further allege that the 2008 Agreement was never explicitly canceled or superseded. In opposition, Buck Kreihs avers that the 2010 Agreement executed between itself and UOS superseded the 2008 Agreement and the indemnity provision's express terms applies not only to UOS but also UBT.

Before this Court can determine which contract controls, it is necessary to examine the indemnification language contained in each agreement.

### *2008 Agreement's Indemnification Provision*

The 2008 Agreement, executed on June 27, 2008, between UBT and Buck Kreihs includes an express indemnification provision that broadly allocates risk to Buck Kreihs for injuries or losses arising from the work performed under the

5

contract. For purposes of the indemnification clause, the 2008 Agreement defines, in relevant part, "Company" to refer "individually and collectively" to "UBT and its parent, subsidiary, affiliated and related companies." Similarly, "Contractor" is defined "individually and collectively" to include Buck Kreihs and its parent, subsidiary, affiliated, and related companies. These definitions apply specifically and exclusively "[f]or purposes of this indemnification clause."

Subsection B of the clause then sets out the parties' obligations. It provides that the "Company shall have no responsibility or liability whatsoever" for any consequences arising from the contractor's work or presence on UBT property, except as otherwise provided. Buck Kreihs, as the contractor, "assumes all risk of liability" related to its work and its employees or subcontractor's presence on UBT property. This risk includes "illness, occupational disease, injury, death, or property damage" as well as any related loss or expense. Under the agreement, Buck Kreihs is further obligated to "defend, protect, indemnify, and hold harmless" UBT and its affiliates from any such losses. The sole exception to this obligation applies when the injury or damages is "CAUSED SOLELY BY UBT's FAULT OR NEGLIGENCE." (emphasis in original).

### *2010 Agreement's Indemnification Provision*

The 2010 Agreement, executed between Buck Kreihs and UOS, also contains an indemnification provision found in Section 10 of the agreement and sets forth the parties' respective obligations and defines the scope of covered claims. Subsection A, titled "Terminology," provides definitions for the indemnification clause. For purposes of the provision, the term "Company" is

defined to mean, in relevant part, "individually and collectively UOS and its parent, subsidiary, affiliated and related companies." "Contractor" is similarly defined to include Buck Kreihs and its related entities.

Subsection B, titled "Contractor's Indemnity" requires Buck Kreihs to indemnify, defend, and hold harmless UOS and its affiliates from any and all claims, losses, and damages incurred by Buck Kreihs' own employees, subcontractors, invitees, or agents. This obligation applies even if those losses are "caused in whole or in part by the negligence or fault of Company."

Subsection C, titled "Company's Indemnity," establishes a reciprocal indemnity obligation on UOS and, by the agreement's definition of "Company," its affiliated entities as well. Under this provision, "Company will indemnify, defend, and hold [Buck Kreihs] harmless from any and all claims, losses, and damages" and associated expenses, "arising out of or related in any way to any Covered Losses" incurred by the Company's employees, other contractors, subcontractors, invitees, trespassers, or agents. Like Buck Kreihs' obligation in Subsection B, this provision applies "even if such Covered Losses are caused in whole or in part by the negligence of the Contractor."

The 2010 Agreement stands in contrast to the 2008 Agreement, which imposed a broad indemnity obligation solely on Buck Kreihs, subject only to a narrow exception where the loss was caused solely by UBT's own negligence or fault. The latter agreement reflects a material change in the parties' indemnity obligations. The 2010 Agreement sets out a mutual indemnity structure that allocates responsibility for employee-related injuries along party lines, regardless of comparative fault.

After the execution of the 2010 Agreement, UMG and Buck Kreihs

7

amended it on November 30, 2011. This amendment formally identified UMG and its affiliated entities, including UBT and U.S. United Barge Line, as named parties to the 2010 Agreement with the same rights, obligations, protections, and responsibilities as UOS under that agreement. Notably, the 2011 Amendment did not modify the substance of the indemnity provision. Rather, it served to clarify UBT's role and to reflect the preexisting corporate affiliation between UBT and UOS. While the 2011 amendment was attached as an exhibit to the summary judgment motion, our determination of the parties' indemnity obligations is based on the language of the original agreements, to which we now turn.

### Controlling Agreement

Having reviewed the indemnification provisions in both the 2008 and 2010 agreements, we consider *de novo* whether the indemnity obligations arising from the worked performed at UBT's facility on the day Mr. Jones was injured are governed by the 2008 Agreement between Buck Kreihs and UBT or the 2010 Agreement between Buck Kreihs and UOS. Resolving this issue requires close examination of the contractual language, the relationships among the parties, and the extent to which corporate affiliation, as expressly defined in the agreements, dictates the scope of indemnity obligations. As explained in detail below, we find the 2010 Agreement is the operative contract governing the indemnity obligations in this case.

Our conclusion is supported by the language of the 2010 Agreement itself, which reflects a clear intent to extend coverage to affiliated entities, including UBT, through the express and unambiguous definition of the term "Company." The 2010 Agreement contains an expanded definition of "Company," applicable solely to the indemnity clause, stating "Company" includes UOS and "its parent,

8

subsidiary, affiliated and related companies." This structure mirrors that of the 2008 Agreement, which likewise referenced affiliated entities, including UBT, in its indemnity provision. There is no dispute that UOS and UBT are wholly owned subsidiaries of UMG. Because the indemnity provision operates on corporate affiliation rather than contractual privity, it is unnecessary to rely on the 2011 Amendment that identified UBT as a party to the 2010 Agreement. The amendment did not create the relationship between the entities; it simply acknowledged a preexisting corporate affiliation between UBT, UOS, and UMG.

Louisiana law instructs that a contract must be interpreted as a whole and to give meaning to all its terms. La. C.C. art. 2050. The indemnity clause at issue is clear and specific in its definition, and there is no suggestion that the inclusion of affiliated companies is either ambiguous or unintended. The 2010 Agreement's indemnity clause expressly extends its coverage to the parent, affiliated, and related companies of UOS. The plain language indicates the intent to create an indemnity framework encompassing not only the signatories, but also their affiliated entities, like UBT.[2]

Although the indemnity clause of the 2008 Agreement between Buck Kreihs and UBT included a similar reference to affiliated entities, the structure of the 2010 Agreement reflects a material change with the adoption of a reciprocal indemnity "knock-for-knock" provision. This type of indemnification agreement reflects the understanding that each party assumes responsibility for its own employees'

---

[2] Even beyond the four corners of the contract, there is consistent evidence of an integrated business relationship between UBT, UOS, and their parent company UMG, including shared addresses and operational coordination that supports the interpretation that the indemnity obligations were intended to extend to affiliated companies like UBT.

claims, regardless of fault.[3] The contractual evolution from the 2008 to the 2010 Agreement evidences a deliberate effort to broaden the scope of indemnity protection and align obligations across affiliated companies.

The rule of contracts presumes that the latter contract supersedes the earlier contract. *La. Smoked Prods., Inc. v. Savoie's Sausage & Food Prods., Inc.*, 96-1716, p. 8 (La. 7/1/97), 696 So.2d 1373, 1378 (finding "[o]bligations of parties to a contract are fixed at the time the contract is entered into," and therefore the obligation under a noncompete clause in a 1988 contract was superseded and extinguished by a subsequent 1991 contract (citation omitted)). Here, the 2010 Agreement's broader indemnity framework, particularly its express reference to affiliated entities, evidences the parties' intent to supersede the 2008 Agreement and apply a unified indemnity structure across affiliated companies. Therefore, the 2010 Agreement supersedes the 2008 Agreement as the later contract which wholly altered the indemnification terms and applies to affiliated entities by express reference.

UOS and UBT claims the 2010 Agreement is exclusive to Buck Kreihs and UOS. However, by its express terms the indemnity clause, unlike other provisions of the agreement, is based on corporate affiliation not contractual privity. Interpreting the indemnity clause to exclude affiliated entities would require reading out language clearly and deliberately included. Contractual provisions should not be rendered meaningless. La. C.C. art. 2049. Thus, where the language is unambiguous and includes affiliated entities, the Court must apply it as written.

---

[3] *See Rogers v. Integrated Expl. & Prod., LLC*, 18-0425, p. 2 (La. App. 4 Cir. 2/20/19), 265 So.3d 880, 883, n. 1 (citing *Darty v. Transocean Offshore U.S.A., Inc.*, 03-1669, p. 6 (La. App. 4 Cir. 5/12/04), 875 So.2d 106, 110).

Finally, while indemnity may ultimately depend on liability, courts have recognized that the threshold question of whether a party is contractually obligated to indemnify another may be decided on summary judgment. *See Berry v. Orleans Par. Sch. Bd.*, 01-3283, p. 6 (La. 6/21/02), 830 So.2d 283, 286. Thus, indemnity obligations arising out of contract may be enforced even before liability is determined where the scope of indemnity is not in dispute. Here, the 2010 Agreement expresses a clear intent to allocate risk and indemnity obligations in advance of any finding of negligence. Accordingly, because the 2010 Agreement is the governing contract and its language is clear and unambiguous, we find that UOS and UBT are contractually obligated to defend and indemnify Buck Kreihs pursuant to the 2010 Agreement's indemnification clause.

For these reasons, we find that the 2010 Agreement governs the indemnity obligations arising from the work performed on the date Mr. Jones was injured and that its terms extend application to UBT as an affiliated entity of UOS. Therefore, pursuant to the 2010 Agreement, UOS and UBT are required to defend and indemnify Buck Kreihs in the instant matter. Accordingly, we affirm the trial court's September 26, 2024 judgment granting summary judgment in favor of Buck Kreihs.

**AFFIRMED.**