**Horace P. PORCHE, Individually and as administrator of the Estate of Gerald Porche, and Irene M. Porche, Plaintiffs,**

v.

**GULF MISSISSIPPI MARINE CORPO-RATION et al., Defendants.**

**Civ. A. No. 74-771.**

United States District Court,
E. D. Louisiana.

Jan. 20, 1975.

Huntington B. Downer, Jr., Joseph L. Waitz, Houma, La., for plaintiffs.

H. Edward Weidlich, Jr., New Orleans, La., for defendant Allen Welding.

Winston E. Rice, New Orleans, La., for defendant Coastal Marine, Inc.

Clarence A. Frost, Stanley Loeb, New Orleans, La., for defendant Fluor Ocean Services, Inc.

Terrence C. Forstall, George A. Frilot, III, George B. Matthews, New Orleans, La., for defendant Gulf Mississippi Marine.

ALVIN B. RUBIN, District Judge:

The plaintiffs brought this suit to recover damages suffered as a result of the death of their son, Gerald Porche. The decedent was employed by Allen Welding; Allen, pursuant to a contract with Fluor Ocean Services, supplied Porche to work aboard a barge floating offshore and do welding on a pipeline being laid by the barge, replacing a regular Fluor employee who was absent from work. Fluor was to pay Allen an hourly rate for these services beginning when Porche left his home. Allen in

turn paid Porche's wages, withheld income taxes and FICA payments.

It was Fluor's responsibility to provide transportation from a Louisiana port to its barge, and it contracted with Coastal Marine to supply this service. Coastal transported Porche and several other persons to the barge on a crewboat. Porche met his death while transferring from the crewboat to the Fluor barge. The plaintiffs sued Fluor, under the Jones Act, on the basis their son had been its borrowed servant, and Coastal for negligence under the general maritime law. Coastal cross-claimed against Fluor for indemnity under its contract with Fluor, and Fluor sought indemnity from Allen Welding under the Allen-Fluor contract. The trial of the case was to a jury with respect to arising claims under the Jones Act; the court tried the general maritime claims against Coastal and the cross-claims and the third-party demand.

After the court had directed a verdict that the decedent had been a borrowed servant of Fluor, the jury returned a verdict finding that Fluor had itself been negligent, and that it was responsible also vicariously for the acts of Coastal. The jury also found Porche to have been contributorily negligent and found that his own negligence was 45% responsible for his death. The court found Coastal to have been independently negligent and entered a judgment casting both defendants; the cross-claims of Coastal against Fluor and the third-party claim of Fluor against Allen now must be considered.

█ Since it pertains to maritime employment, the indemnity contract is maritime in nature, and its construction is controlled by admiralty principles, not state law. Transcontinental Gas Pipe L. Corp. v. Mobile Drill. Barge, 5 Cir. 1970, 424 F.2d 684; Halliburton Company v. Norton Drilling Company, 5 Cir. 1962, 302 F.2d 431; A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 2 Cir. 1958, 256 F.2d 227. Where one party is at fault, and the other free of all fault, the indemnity obligation is easy to interpret, and the express clause may, indeed, add little to the principles of implied indemnity. Where, however, there is some other combination of fault—non-fault, and the parties have not expressly foreseen the ultimate turn of events, the intention of the clauses becomes more difficult to divine. In a contract between shipowner and contractor either party may be an indemnitor or an indemnitee, and frequently, each party will owe and receive indemnity in reciprocal terms. Where a third person is injured, we may hypothesize the possible combinations of events as follows:

1. Neither party is at fault and the plaintiff does not recover. Here the issue ultimately is merely which party bears the expense of litigation.

2. The shipowner is solely at fault (or is solely responsible because of liability without fault, for example, for unseaworthiness of the vessel), and the contractor is therefore not cast in judgment.

3. The contractor is solely at fault and the shipowner is not cast in judgment.

4. The contractor is solely at fault but the shipowner is cast in judgment vicariously.

5. Neither party is at fault but one or both are cast in judgment vicariously because of the fault of some third person.

6. Both shipowner and contractor are at fault.

The indemnity clause, as applied to each of these circumstances is a risk assignment or risk shifting device. As noted in Cole v. Chevron Chemical Company—Oronite Division, E.D.La.1971, 334 F.Supp. 263, 266, reversed in part on other grounds, 5 Cir. 1973, 477 F.2d 361:

In the usual tort situation, there is no prior relationship between the potential tort defendant and his prospective indemnitor. Hence they have no opportunity to alter the distribution

of risks. But where a principal employs a contractor, the contract between them may embrace not only the work to be done and the price to be paid, but also the risk of tort claims that may arise. See 2 Williston on Contracts, ¶345 (3d ed. 1959), 1 Harper and James, The Law of Torts, ¶10.2, at 723 (1956). By contract either party may relieve the other from the duty of contribution or from the duty of indemnity. And either may undertake a duty to contribute or indemnify where none would otherwise exist.

■ Where one party alone is at fault, the principles of contractual interpretation were set for this circuit in Batson-Cook Company v. Industrial Steel Erectors, 5 Cir. 1958, 257 F.2d 410:

> [W]hile it need not be done in any particular language or form, unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence. 257 F.2d at 412.

The *Batson-Cook* rule has been expanded to fit the joint-fault situation. Thus the court said in Transcontinental Gas Pipe L. Corp. v. Mobile Drill. Barge, supra, 424 F.2d at 692,

> Although in *Batson-Cook* the indemnitor was not negligent and the damage was caused solely by the negligence of the indemnitee, the rule requiring specificity of the intent to indemnify for the indemnitee's own negligence is equally applicable in situations where, as here, the concurring negligence of the indemnitee and indemnitor causes the damage. *See* United States v. Seckinger, 5 Cir. 1969, 408 F.2d 146, reversed on other grounds, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 [October 13, 1969].

■ As noted in Transcontinental Gas Pipe L. Corp. v. Mobile Drill. Barge, supra, the contract need not contain talismanic words to shift the indemnitee's share of the liability where joint fault is found. But there must be something to reflect that intention either in the contract language or the surrounding circumstances ("in the realities of the situation from the standpoint of the parties at the time the contract was made," Transcontinental Gas Pipe L. Corp. v. Mobile Drill. Barge, 424 F.2d at 692).

■■ The question is not one merely of finding a definition of the terms used by consulting dictionary and decision, but of construing a contract intended to effect a desired economic result. Hence it must be accomplished by reading the contract and its accompanying documents, such as contractually-required insurance, as a whole, and in the light of the situation of the parties and the purpose of the indemnity clause. Compare Day v. Ocean Drilling and Exploration Co., E.D.La.1973, 353 F.Supp. 1350, 1351. Thus, it is appropriate to consider whether the contractor is undertaking to supply a completed result or is merely furnishing labor, to be directed by the other parties. See Tidewater Oil Company v. The Travelers Ins. Co., 5 Cir. 1972, 468 F.2d 985, 987. The word "employee" may, or may not, embrace a borrowed servant, depending on the intention of the parties and whether under their arrangement the term "employee" was intended to reflect that person's Jones Act status or whether it was designed merely to adopt the conventional definition by looking only to the payroll relationship.

We apply these principles in resolving the issues before us:

### COASTAL'S CROSS-CLAIM AGAINST FLUOR

Coastal's indemnity claim is based on a contract clause that reads in part:

> Fluor assumes all risk of liability in connection with injury or death of any of its employees, its authorized agents or representatives acting as a crew aboard the BARGE as shipriders aboard the TUG, or CREWBOAT and FLUOR agrees to indemnify and hold

OWNER harmless and its subsidiary corporations harmless against and from all claims, demands or causes or actions which may be asserted by any such crew member or shiprider against OWNER and/or the TUG or CREW-BOAT arising out of or in connection with any such injury or death, however caused and whether resulting in part from the negligence of OWNER, but excluding OWNER's soul [sic] negligence or fault.

Fluor claims that the decedent was not its "employee" as the term is used in this clause; Porche was an employee of Allen for the payment of wages and withholding purposes, thus the entire clause is inapplicable. This would be an incongruous construction of the clause whether its construction be viewed narrowly as merely a question of defining the word "employee" or broadly in the light of the functional relationship of the various parties.

■ The clause deals with indemnity for personal injury and death claims, not the other aspects of the employment relationship. It therefore seems appropriate to define the term "employee" in the context of personal injury liability. For this purpose, Porche was Fluor's employee because Fluor had control over his activities and he was a member of the crew of the Fluor barge. As between Fluor and Coastal, all of the workers employed on the Fluor barge under the supervision of Fluor are "employees" of Fluor, without regard to whether their wages were paid or taxes withheld by an independent contractor.

The meaning of the term "employee" and the intent of the clause lead to the same conclusion: all liability arising out of injury or death to persons doing Fluor's work was to be Fluor's responsibility unless the liability arose out of Coastal's sole fault. The jury found Fluor to be at fault, apart from any negligence of Coastal, and there was substantial evidence to support its conclusion; it cannot therefore be gainsaid that the liability to Porche does not arise out of Coastal's sole negligence. Coastal's claim for indemnity is therefore granted.

## FLUOR'S THIRD-PARTY CLAIM AGAINST ALLEN WELDING

Fluor in turn seeks indemnity from Allen. Here the problem can not in any event be resolved by interpreting a word, such as "employee," but must be considered in the context of an entire clause. That interpretative decision is made more difficult because Allen's contract with Fluor contains two discrete indemnity clauses; one in an instrument entitled "Purchase Order," and the other in a form entitled "Contract," attached to the purchase order. Since either clause leads to the same conclusion, it is unnecessary to determine which represents the final agreement between the parties.

■ Little difficulty is presented by the clause contained in the form contract, which reads in part as follows:

11. CONTRACTOR assumes responsibility for all losses, expenses, damages, demands and claims in connection with or arising out of any injury, or alleged injury (including death) to persons or loss of or damage to, or alleged loss of or damage to, property, sustained or alleged to have been sustained in connection with or to have arisen out of the performance of the WORK by CONTRACTOR, its subcontractors, agents, servants or employees, including such losses, expenses or damages sustained by FLUOR or OWNER, and herein indemnifies and holds harmless FLUOR and OWNER, or either, their agents, servants and employees, from any and all such losses, expenses, damages, demands, and claims, and agrees to defend any suit or action brought against them, or any of them, based on any such alleged injury, loss or damage, and to pay all damages, costs and expenses, including reasonable attorney's fees, in connection therewith or resulting therefrom.

It is evident that the clause contains no express language requiring Allen to indemnify Fluor for liability arising out of Fluor's own negligence; hence no indemnity is due under this clause.

■ The clause contained in the "purchase order" reads as follows:

CONTRACTOR assumes all risk of liability in connection with the injury or death of any of its employees occuring in connection with or arising from the performance of his duties during the terms of this Agreement, and agrees to indemnify and hold harmless FLUOR and those [in whose] work FLUOR is engaged, against and from all loss, damage, liability and expense, arising out of or in connection with any such injury or death, however caused and whether resulting in part from the negligence of FLUOR, but excluding the sole negligence or fault of FLUOR.

The clause applies only "in connection with the injury or death of any of its [Allen's] employees." The contract contained a similar clause in favor of Allen with respect to Fluor employees. If the term "employees" as used in Allen's indemnity obligation is limited to persons actually working under Allen's control, then Allen owed Fluor no indemnity for Porche was not one of Allen's "employees." If the term "employees" embraces all persons on Allen's payroll, whether or not they were under Fluor's contract, Allen's liability is entire for all damages "excluding the sole negligence or fault of Fluor." This clearly makes Allen liable for claims resulting entirely or partially from its own fault, and for claims found to have been neither its fault nor Fluor's. Where the fault is partly Fluor's and partly that of a third person, here Coastal, Fluor contends, the fault is not solely Fluor's; hence Allen must indemnify.

It is unnecessary to plumb the depth this argument would have if the negligent party were unrelated to Fluor. If, indeed, some other vessel had run into Coastal's crewboat and Porche had died as a result of the fault of the master of that vessel, the argument would be tenable. But here Coastal was doing Fluor's work. Fluor had assumed the duty of transporting Allen's employees to the Fluor barge. The parties could scarce have intended that Fluor be permitted to contract out the duties it owed Allen, and then, when the negligent performance of these duties caused injury either alone or in conjunction with Fluor's negligence, contend that the injury did not result from the "sole negligence of Fluor." The negligence of Coastal is imputed to Fluor for purposes of this contract just as it is for application of the Jones Act. Nor was any evidence of a contrary intent offered. In the absence of something more convincing than the bare words of the contract, I do not believe that the parties intended to assign the risk of the negligence of Fluor's contractors to Allen. Fluor's claim for indemnity is therefore denied.

## THE DIRECTED VERDICT

The court directed a verdict for the plaintiffs on the issue of the decedent's status as a Jones Act seaman. The evidence was uncontradicted that Porche was to work on the Fluor barge, under Fluor's direction and control. Although on Allen's payroll, he was to substitute for a regular Fluor employee who was absent from work.

■ Whether an employee who works aboard a vessel is a seaman within the meaning of the Jones Act is determined by a threefold test: (1) the vessel must be in navigation, (2) the worker's function must be "primarily in aid of navigation," and (3) the worker must have a "more or less permanent connection with the ship." See authorities cited in Larson, Conflicts Between Seamen's Remedies and Workmen's Compensation Acts, 40 Fordham L.Rev. 473, 475 n.8 (1972); Norris, The Law of Seamen § 19 (3d ed. 1970). Any question as to the first criterion may be disposed of summarily. The RB-2 was a barge afloat and engaged in laying pipe in the Gulf of Mexico; it is now well-settled that such structures

are "vessels." McCarty v. Service Contracting, Inc., E.D.La.1970, 317 F.Supp. 629; Robichaux v. Kerr McGee Oil Industries, Inc., W.D.La.1970, 317 F.Supp. 587.

 Likewise, there can be no question that the work the decedent was going to do was "primarily in aid of navigation." This requires only "that his [the seaman's] duties have a connection with the mission or the function of the floatable structure". Offshore Co. v. Robison, 5 Cir. 1959, 266 F.2d 769, 780. Porche was to weld together sections of pipe laid by the barge. Reasonable men could not have found such activity to fall without the *Robison* test.

 The decedent was to serve aboard the RB–2 as a temporary replacement; his service, however, was to be for an indefinite period of time—until the regular welder was able to return. This uncontradicted evidence establishes that the decedent's connection with the vessel was "more or less permanent." The requirement of a relatively permanent tie to the vessel is meant to deny seaman's status to those who come aboard a vessel for an isolated piece of work, not to deprive a person whose duties are truly navigational of Jones Act rights merely because he serves aboard a vessel for only a relatively short period of time. See Weiss v. Central R.R. Co. of New Jersey, 2d Cir. 1956, 235 F.2d 309.

 The injury occurred prior to Porche's actual arrival aboard the RB–2; this does not, however, mean that he had not yet become a seaman. When transportation to and from work aboard a vessel is supplied by the employer in the employer's interest, the employee is engaged "in the course of his employment" during the period of transportation. Vincent v. Harvey Well Service, 5 Cir. 1971, 441 F.2d 146. Therefore, Mr. Porche became a seaman before he put his foot on the deck of the barge.

 The court also directed a verdict on the issue of Porche's status as a borrowed servant of Fluor. His work was to be under the sole direction of Fluor's supervisors; in fact, no supervisory personnel of Allen Welding were aboard the RB–2. Allen was to be paid for Porche's services from the time the crewboat left the dock, and Porche was replacing a man who was admittedly a member of the crew of the RB–2. All of the testimony at trial indicated that both Fluor and Allen anticipated Porche was to take orders from Fluor supervisors as to all details of his work. Although the contract contained a clause expressing the intention that Allen's employees were not to be considered the employees of Fluor,[1] it is evident that this portion of the agreement was modified by the subsequent agreement to dispatch Porche to perform duties that required him to function as a servant of Fluor.

## COASTAL MARINE'S DUTY TO PROVIDE A SAFE MEANS OF INGRESS AND EGRESS

Coastal Marine contended that, as between crewboat and barge, the duty to supply a passenger on the crewboat en route to the barge with a proper and

---

1. Clause 5 of the contract reads:

 5. CONTRACTOR shall perform the aforesaid WORK and furnish all labor in connection therewith at its sole risk and account and assume full responsibility therefor. Nothing in this agreement shall be deemed to constitute CONTRACTOR, or any of its employees, the agent, representative or employee of FLUOR or OWNER. CONTRACTOR shall be an independent contractor, and any provisions or recitals in any purchase order, the Specifications for Work and Additional Terms, or this contract which may appear to give FLUOR the right to direct CONTRACTOR as to the details of the performance of the WORK, or to exercise a measure of control over the WORK, shall mean that CONTRACTOR shall follow the desires of FLUOR in the results only of the WORK and not in the means whereby the WORK is to be accomplished, and CONTRACTOR shall use its own discretion and shall have complete and authoritative control over the WORK and as to the details of performing the WORK.

safe means of ingress and egress is that of the owner and operator of the vessel aboard which the passenger is to be employed, in this instance Fluor. It urges that this proposition is established by Massey v. Williams-McWilliams, Inc., 5 Cir. 1969, 414 F.2d 675.

But the duty of a vessel transporting passengers cannot be thus shifted to the employer that compels its destination. A maritime carrier owes its passengers a high degree of care, not only in transporting them but in attempting to see to their safe embarkation and disembarkation. Isham v. Pacific Far East Line, Inc., 9 Cir. 1973, 476 F.2d 835.[2] Massey does not lessen this responsibility. While the court there exonerated the crewboat from liability for an injury to its passenger, it based the result

[E]ntirely on the failure of the DB–1 [the barge] to take appropriate steps by changing the course heading to afford a lee. This was a responsibility of Shipowner and those in charge of the DB–1. It cannot be palmed off onto the crewboat. If the arrangement was unsafe, and it obviously was, this was due not to the action of the Chickcharney, her owners, or crew, but to Shipowner who owed this nondelegable duty to its own crew members. 414 F.2d at 679.

Since the crewboat operator in Massey could do nothing to alter the course of the barge, there was simply no negligence on the part of the crewboat or its crew. The case does not stand for the proposition that a vessel carrying passengers to their maritime place of work has no duty to provide a safe means of ingress and egress.

### THE ADDITIONAL JURY INSTRUCTION

At the conclusion of the presentation of evidence and closing ar-guments on the issue of quantum of damages, the court gave the jury a combined charge and verdict, that is, a general charge interposing questions to be answered by the jury. The jury retired to deliberate; then, after a period of time, sent a written question to the court:

In the event we award the plaintiffs the sum of $100,000. Does that mean they receive this amount or a portion of this value?

Counsel for the defendants objected, not to accuracy of the answer given,[3] but to the court's giving any answer at all.

There is some authority that, when a judge requires a jury to return a special verdict, under F.R.Civ.P. 49(a), the jury should not be informed of the legal consequences of their answers, Theodorf v. Lipsey, 7 Cir. 1956, 237 F.2d 190. But the better view is that a jury is entitled to know what effect its decision will have. Brown, Federal Special Verdicts: The Doubt Eliminator, 1968, 44 F.R.D. 338, 341; Wright & Miller, Federal Practice & Procedure § 2509. The jury is not to be set loose in a maze of factual questions, to be answered without intelligent awareness of the consequences. One of the purposes of the jury system is to temper the strict application of law to facts, and thus bring to the administration of justice a common-sense lay approach, a purpose ill-served by relegating the jury to a role of determining facts in vacuo, ignorant of the significance of their findings. See C. Wright, Law of Federal Courts § 94 (1970).

### MOTION TO STRIKE MRS. PORCHE AS A PARTY PLAINTIFF

Four days before trial commenced, the court was presented with a motion by Coastal Marine to strike Mrs. Porche as a party plaintiff, claiming that suit may be brought under the

---

2. See also In re Dearborn Marine Service, Inc., 5 Cir. 1974, 499 F.2d 263, 278.

3. The court responded, in light of the finding of 45% contributory negligence on the part of the decedent, "If your total award is $100,000, the plaintiffs will receive $55,000."

Death on the High Seas Act or the general maritime law only in the name of the personal representative. Since the motion was presented so belatedly as to give neither court nor counsel adequate time for consideration at that time, it was denied. The motion is, however, well-founded, and it is hereby granted. 46 U.S.C. § 761; Futch v. Midland Enterprises, Inc., 5 Cir. 1973, 471 F.2d 1195.

Accordingly, the clerk is directed to enter judgment granting Coastal Marine's cross-claim for indemnity against Fluor Ocean Services, denying Fluor Ocean Services' third party claim against Allen Welding, and striking Mrs. Porche as a party plaintiff.