# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 16-50009

——————

United States Court of Appeals
Fifth Circuit

**FILED**
July 25, 2017

Lyle W. Cayce
Clerk

NEWCSI, INCORPORATED,

      Plaintiff - Appellee,

v.

STAFFING 360 SOLUTIONS, INCORPORATED,

      Defendant - Appellant.

——————

Appeal from the United States District Court
for the Western District of Texas

——————

Before ELROD, SOUTHWICK, and GRAVES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

A jury found that a staffing company violated the terms of the stock purchase agreement by which it had acquired another company. The district court entered a judgment against the staffing company for approximately $1.3 million in actual and liquidated damages. The staffing company appeals on three grounds. First, it argues that the evidence was insufficient to support the jury's determination. Second, it argues that the district court erred in enforcing the stock purchase agreement's liquidated damages clause and, alternatively, that the district court miscalculated the damages to be paid under that clause. Third, the company argues that the district court abused its discretion by instructing the jury not to consider whether finding a breach

No. 16-50009

would trigger liquidated damages.  Because none of these arguments is persuasive, we AFFIRM the judgment of the district court.

## I.

In August 2013, the staffing company, Staffing 360 Solutions, Inc., acquired Control Solutions International from its parent company, NewCSI, pursuant to a stock purchase agreement.[1]  The agreement contained two provisions that are relevant to this case.  One is the provision that the jury determined Staffing 360 breached.  The other is the liquidated damages clause that the district court determined was triggered by Staffing 360's breach.

The first provision, Section 2.7, had to do with "Deferred Tax Benefit." Section 2.7 defined Deferred Tax Benefit to mean:

> [T]he dollar value of Deferred Tax Assets as of the Closing Date that have accrued or will benefit in the future to CSI or the Purchaser as a result of the Purchaser's acquisition of CSI . . . without regard as to whether or not such Deferred Tax Asset has been or can be used in the current tax year or is deferred to a future tax year.

Section 2.7 required Staffing 360 to calculate the Deferred Tax Benefit by March 31, 2014, and to pay fifty percent of the Deferred Tax Benefit to NewCSI by April 15, 2014.

The second provision, Section 2.2(d), obligated Staffing 360 to pay liquidated damages upon the occurrence of various "Adjustment Events."  One Adjustment Event was "[t]he failure of the Purchaser to perform, keep or observe any term, provision, condition, covenant, warranty or representation contained in this Agreement."  Such an event was to trigger payment by Staffing 360 of an "Adjustment Amount" equal to "$1.4 million less the amount

---

[1] We describe the facts in the light most favorable to the verdict, as we must. *United States v. Ambriz*, 727 F.3d 378, 380 n.1 (5th Cir. 2013).

of any Earn Out previously paid to NewCSI or the Shareholders."[2]   Section 2.2(d) specified that "the actual damages likely to result from an Adjustment Event are difficult to estimate on the date of this Agreement" and that the parties intended the Adjustment Amount as compensation for any Adjustment Event rather than as a penalty.

On March 31, 2014—the same day that Staffing 360 was to finalize its valuation of CSI's deferred tax assets—Staffing 360 and NewCSI representatives began to dispute the meaning of "Deferred Tax Benefit" under Section 2.7.  Three days earlier, Staffing 360's CFO, Jeff Mitchell, had written to Charlie Cooper, NewCSI's Managing Partner, stating, "I think the purpose of this clause was basically to say, if there is a tax benefit to the parent, 50% of that benefit will be paid to you guys in cash."   On March 31, Cooper responded, "[T]he agreement speaks to [Staffing 360] paying 50% of any deferred tax asset, not the net of any deferred tax asset and deferred tax liability.  That was deliberate and highly negotiated as part of the overall deal." Mitchell replied that he would be happy to discuss further, but that his initial review of CSI's balance sheet at the time of purchase showed liabilities in both the Tax Asset account and the Tax Liability account.  On April 9, Cooper wrote back with a detailed calculation of $308,866 in deferred tax assets and stated that Staffing 360 owed fifty percent of this amount, or $154,433, to NewCSI. Mitchell promised to "take a look and get back to you shortly."   It appears Mitchell did not follow up and Staffing 360 did not make a Section 2.7 payment.

---

[2] The agreement defined Earn Out payments as performance-based compensation calculated as a percentage of gross profit and capped at $2.1 million, payable to NewCSI monthly over a four-year period.  Section 2.2(d) provided that payment of the Adjustment Amount "shall be applied toward the final amount due under the Earn Out, and the regular schedule of Earn Out payments shall continue as if the Adjustment Amount had not been paid, until such time as the full Earn Out obligation (including Adjustment Amounts paid) has been satisfied."

No. 16-50009

NewCSI sued Staffing 360 in state court for breach of contract, and Staffing 360 removed the case to federal court on the basis of diversity of citizenship. In the district court, Staffing 360 argued that calculating a Deferred Tax Benefit under Section 2.7 required netting deferred tax assets and liabilities, which resulted in a negative value and therefore showed that no Section 2.7 payment was owed. NewCSI argued that the Deferred Tax Benefit consisted of the total value of all deferred tax assets without netting out liabilities, which resulted in a positive value and therefore showed that Staffing 360 had breached the contract by failing to make a Section 2.7 payment.

During the five-day jury trial, both parties offered expert testimony as to the meaning of the disputed term. Staffing 360 called Paul Howell, a tax accounting expert. Howell testified that deferred taxes "is really only a GAAP [Generally Accepted Accounting Principles] term." He explained that, to calculate deferred taxes under GAAP, "[y]ou net your deferred tax assets and the—your deferred tax liabilities." According to Howell, CSI's deferred tax liabilities exceeded its deferred tax assets by approximately $117,134, so that Staffing 360's acquisition of CSI produced no net reduction in deferred taxes. Moreover, even if CSI had more deferred tax assets than liabilities, Howell testified that this would not have resulted in a reduction of Staffing 360's deferred taxes because Staffing 360 already had more deferred tax assets than it could use. Howell also testified that he thought Cooper overestimated CSI's gross deferred tax assets by $199,961 because he treated as assets items that should not have been so treated.

NewCSI called Cooper to describe the negotiations surrounding Section 2.7, including statements by Staffing 360 personnel clearly stating that the payout was not to be reduced by tax liabilities. Otto Wheeler, a public accounting expert, testified that nothing in Section 2.7 calls for deferred tax

4

liabilities to be netted against deferred tax assets. This interpretation was supported by an email from Nancy Peck, a CPA at an auditing firm that NewCSI hired to calculate the amount owed under Section 2.7. Peck wrote that the clause "specifically uses the term 'Deferred Tax Assets' and thus not net of deferred tax liabilities." She prepared a memo valuing CSI's deferred tax assets at the time of closing at $308,866—the same amount that Cooper had calculated in his email to Mitchell.

After the close of evidence, the jury was asked whether Staffing 360 breached Section 2.7 of the stock purchase agreement and, if so, what damages this breach caused. The jury instructions provided that "[t]echnical words should be interpreted as usually understood by persons in the profession or business to which they relate and must be taken in the technical sense, unless the context of the instrument or applicable usage or surrounding circumstances clearly indicate a different meaning." The jury was also instructed to find breach only if Staffing 360's failure to comply was material and listed several factors to consider in evaluating materiality, including "[t]he extent to which the party failing to perform will suffer forfeiture." The jury question on damages limited the valuation to fifty percent of the Deferred Tax Benefit. While it was deliberating, the jury sent out a note to ask whether its answers could trigger liquidated damages and whether these damages should be included in the damages calculation. Staffing 360's counsel asked the court to instruct the jury that a finding of breach would trigger liquidated damages, arguing that this could influence the jury's evaluation of whether the breach was material. However, the court instructed the jury, "You are not to consider the result of your answers to the questions submitted to you."

The jury returned a verdict finding that Staffing 360 breached Section 2.7 of the stock purchase agreement, causing $154,433 in damages. The district court denied Staffing 360's motion for a new trial, which was based on

No. 16-50009

allegations that the jury's finding of breach was against the great weight of the evidence, that the jury charge was erroneous because the court failed to submit a construction of Section 2.7, and that the court's response to the jury note was erroneous.  Staffing 360 filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), arguing that there was no evidence supporting a finding that Staffing 360 owed a payment to NewCSI under Section 2.7.  However, Staffing 360 had not made a Rule 50(a) motion before the jury's verdict, and the district court denied Staffing 360's Rule 50(b) motion.   The district court entered a judgment against Staffing 360 of $1,306,576 plus pre- and post-judgment interest, pursuant to the jury's findings and the liquidated damages clause.[3]

Staffing 360 appeals the district court's judgment, arguing that the jury's findings should be set aside as contrary to uncontradicted expert testimony, that the district court's award of liquidated damages should be vacated because the liquidated damages provision is an unenforceable penalty or should be revised because the credit for earn-out payments was miscalculated, and that a new trial should be ordered because the district court abused its discretion by instructing the jury not to consider the consequences of its answers.

## II.

We review an unpreserved challenge to the sufficiency of the evidence for plain error and will not reverse if "*any* evidence supports the jury verdict." *United States ex rel. Wallace v. Flintco Inc.,* 143 F.3d 955, 960 (5th Cir. 1998).[4]

---

[3] This amount consisted of $154,433 in actual damages plus $1.4 million in liquidated damages, less $247,857 of earn-out payments previously paid by Staffing 360.

[4] To preserve a challenge to the sufficiency of the evidence, a party must "move for judgment as a matter of law under Rule 50(a) on the basis of insufficient evidence at the conclusion of all of the evidence." *Flintco*, 143 F.3d at 960.  We have sometimes excused technical non-compliance with this rule when doing so was consistent with Rule 50's purposes and when near-compliance was achieved by a Rule 50(a) motion that was made at the close

No. 16-50009

A jury may not "disregard arbitrarily the unequivocal, uncontradicted and unimpeached testimony of an expert witness" on a technical question beyond the competence of lay determination. *Webster v. Offshore Food Serv., Inc.*, 434 F.2d 1191, 1193 (5th Cir. 1970). More generally, a jury may not disregard testimony "when from no reasonable point of view is it open to doubt." *Brown v. Ford Motor Co.*, 479 F.2d 521, 523 (5th Cir. 1973).

As stated above, Section 2.7 required Staffing 360 to pay NewCSI fifty percent of the Deferred Tax Benefit, which it defined as:

> [T]he dollar value of Deferred Tax Assets as of the Closing Date that have accrued or will benefit in the future to CSI or the Purchaser as a result of the Purchaser's acquisition of CSI . . . without regard as to whether or not such Deferred Tax Asset has been or can be used in the current tax year or is deferred to a future tax year.

According to Staffing 360, the jury's finding that this payment obligation was breached is not supported by sufficient evidence because it conflicts with Howell's uncontradicted expert testimony in two respects. First, Staffing 360 argues that, to find breach, the jury must have disregarded Howell's testimony that "deferred tax assets" is a technical term defined by GAAP to require

---

of the plaintiff's case rather than at the close of all the evidence. *See id.* at 960–61. This is not such a situation. Because Staffing 360 did not make a Rule 50(a) motion at any point, this appeal is governed by the general rule that an argument not made in a Rule 50(a) motion has not been preserved for a Rule 50(b) motion or for appeal. *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676, 680 (5th Cir. 2016); *see also* Fed. R. Civ. P. 50 advisory committee's note to 1991 amendment ("In no event, however, should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact."); *id.* (explaining that Rule 50's purpose is to "assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment"). Even assuming *arguendo* that we did excuse Staffing 360's failure to make a Rule 50(a) motion, Staffing 360 would still have to show that "there was no conflict in substantial evidence such that reasonable minds could differ." *Horton v. Buhrke*, 926 F.2d 456, 459 (5th Cir. 1991). Application of this standard would not change the outcome here.

7

netting assets and liabilities. Second, Staffing 360 argues that, to find breach, the jury must have disregarded Howell's testimony that Staffing 360 did not owe any payment under Section 2.7 because it did not actually experience a reduction in deferred taxes.[5]

Staffing 360's first contention simply mischaracterizes Howell's testimony. Howell testified that *deferred taxes* are calculated by netting deferred tax assets and deferred tax liabilities. However, Staffing 360 has not cited any portion of the record in which Howell testified that deferred tax assets are calculated by netting deferred tax assets and deferred tax liabilities.[6] In fact, as Staffing 360 itself has noted, Howell explained that a deferred tax asset is "a future tax deduction that has already been reflected on the company's books," such as "vacation pay, which is booked as it is earned, but cannot be deducted for tax purposes until actually paid." This definition of deferred tax assets does not involve netting and is consistent with the jury's determination that the Deferred Tax Benefit, or "the dollar value of Deferred Tax Assets . . . ," can be calculated without netting.

As for Staffing 360's second contention, the conclusion that Staffing 360 did not owe any payment under Section 2.7 does not follow from Howell's testimony that Staffing 360 did not actually experience a reduction in deferred taxes. Howell testified that Staffing 360's acquisition of CSI did not reduce its

---

[5] Staffing 360 also argues that the evidence is insufficient to support the jury's determination that the Deferred Tax Benefit, without netting, was $308,866 when Howell testified that it was $108,905. Because Cooper and Peck both calculated the gross Deferred Tax Benefit at $308,866, Staffing 360 cannot show an absence of "*any* evidence [that] supports the jury verdict." *Flintco*, 143 F.3d at 960.

[6] This proposition can be stated in the form of the following equation: $A = A - L$, where A stands for deferred tax assets and L stands for deferred tax liabilities. The only way that this equation can be true is if $L = 0$. If that were true, netting out deferred tax liabilities would not impact the value of deferred tax assets. Thus, assuming *arguendo* that Staffing 360 has correctly characterized Howell's testimony, this testimony shows that the jury correctly found netting to be unnecessary in calculating the value of deferred tax assets.

No. 16-50009

deferred taxes both because CSI's deferred tax liabilities exceeded its deferred tax assets and because, even if this were not the case, Staffing 360 already had more deferred tax assets than it could use before it acquired CSI. However, the definition of Deferred Tax Benefit in Section 2.7 does not depend on how Staffing 360 subsequently utilized CSI's deferred tax assets and, as discussed above, does not require netting out the value of deferred tax liabilities. Thus, whether Staffing 360 owed a payment under Section 2.7 is not affected by Howell's testimony.

Moreover, the jury's finding that Staffing 360 breached its payment obligation under Section 2.7 is supported by other evidence. As described above, Cooper testified that the parties expressly negotiated over the fact that the payment due under Section 2.7 would be calculated without netting deferred tax liabilities against deferred tax assets. Wheeler testified that nothing in the language of Section 2.7 calls for netting. Peck wrote that Section 2.7's use of the term deferred tax assets indicated that deferred tax liabilities should not be netted. The jury's finding that Staffing 360 breached an obligation to pay NewCSI fifty percent of CSI's deferred tax assets, without netting out deferred tax liabilities, is amply supported by the record. Because the jury's finding does not disregard uncontradicted expert testimony and is supported by record evidence, Staffing 360's challenge to the sufficiency of the evidence fails. *See Flintco*, 143 F.3d at 960; *Webster*, 434 F.2d at 1193.

**III.**

Staffing 360 challenges both the validity and the amount of the district court's $1,306,576 liquidated damages award. It challenges the validity of the award on the ground that the liquidated damages clause in the stock purchase agreement is an illegal and unenforceable penalty provision. It challenges the amount of the award on the ground that, even if the clause is enforceable, the

9

No. 16-50009

district court miscalculated the credit that Staffing 360 should have received for earn-out payments made to NewCSI.

## A.

Staffing 360's argument that the liquidated damages clause is an illegal and unenforceable penalty provision fails for three independent reasons. First, Staffing 360 forfeited the argument under Federal Rule of Civil Procedure 8 by failing to raise the issue as an affirmative defense in its responsive pleading in district court. Second, Staffing 360 forfeited the argument under Federal Rule of Civil Procedure 50 by failing to raise it in a motion for judgment as a matter of law before the jury deliberated.[7] Third, Staffing 360's arguments on the merits do not establish that the liquidated damages clause provides for a penalty.

## 1.

Under Federal Rule of Civil Procedure 8(c)(1), illegality is an affirmative defense that a defendant must raise in its responsive pleading in district court. A defendant who fails to raise an affirmative defense in its responsive pleading forfeits that defense unless the "defendant raises the issue at a pragmatically sufficient time" and "the plaintiff is not prejudiced in its ability to respond." *Lee v. United States*, 765 F.3d 521, 523–24 (5th Cir. 2014). The prejudice inquiry focuses on "whether the plaintiff had sufficient notice to prepare for and contest the defense." *Id.* at 525.

---

[7] The parties discuss both issues in terms of waiver. However, the question is technically one of forfeiture, and we address it accordingly. *See United States v. Puckett*, 505 F.3d 377, 383 n.1 (5th Cir. 2007) (explaining that a waiver is an "intentional relinquishment of a known right, and extinguishes an error completely," whereas a forfeiture is a "failure to make the timely assertion of a right" and does not completely foreclose appellate review); *see also United States v. Scroggins*, 599 F.3d 433, 448–49 (5th Cir. 2010) (discussing the significance of the distinction between waiver and forfeiture for purposes of determining the proper standard of review).

No. 16-50009

Staffing 360 raised the alleged illegality of the liquidated damages clause in a post-verdict motion for entry of judgment as a matter of law.  The district court determined that Staffing 360 had forfeited the defense by failing to raise it in its responsive pleading.  Staffing 360 challenges this determination based on *Lee*'s exception to the Rule 8 requirement, arguing that it raised the legality of the liquidated damages clause at a pragmatically sufficient time and that NewCSI was not prejudiced in its ability to respond.  According to Staffing 360, NewCSI had sufficient opportunity to contest the defense of illegality in its response to Staffing 360's motion for judgment because the defense raised a legal question that required no factual development.  NewCSI counters that it was prejudiced in its ability to contest the defense because it would have sought to develop relevant evidence at trial if the defense had been timely raised.[8]

Because Staffing 360's failure to raise the defense until after trial prevented NewCSI from developing facts that could have aided in contesting the defense, Staffing 360's timing prejudiced NewCSI's ability to respond.  Accordingly, Staffing 360 has not satisfied *Lee* and is barred from contesting the legality of the liquidated damages clause under Rule 8.

**2.**

As discussed above, a party must generally raise an argument in a Rule 50(a) motion at the close of evidence in order to properly raise it in a post-verdict motion for judgment as a matter of law under Rule 50(b) or to properly present the issue for our resolution on appeal.  *OneBeacon*, 841 F.3d at 680.[9]

---

[8] Among other things, NewCSI states that it "would have presented evidence regarding the difficulty in calculating its actual damages that could result from any [breach] as of the time of contracting and the foreseeability of damages to NewCSI . . . ."

[9] Although the Rule 50 preservation requirement bars us from resolving an unpreserved issue on appeal, it does not bar us from considering whether the issue may merit

11

Staffing 360 does not argue, as it did in the context of the evidentiary challenge discussed in Part II, *supra*, that we should excuse its failure to make a Rule 50(a) motion.  Rather, it cites out-of-circuit precedent for the proposition that a Rule 50(a) motion is only necessary to preserve a challenge to the sufficiency of the evidence and was not necessary in this case to preserve a challenge to the legality of the liquidated damages clause because: (1) the issue is a purely legal question that can be decided by referring to undisputed facts; and (2) the issue was presented to the district court in a dispositive motion that the district court denied.  *See Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 187, 189 (3d Cir. 2015) (holding that appellants could not make an argument on appeal that raised fact issues not argued in a Rule 50 motion).

We need not decide whether this is a correct statement of the law. Assuming *arguendo* that we accepted this proposed exception to Rule 50's preservation requirement, Staffing 360's challenge to the legality of the liquidated damages clause would not fit within the exception because it involves a challenge to the sufficiency of the evidence.  The New York Court of Appeals has held that summary judgment on the enforceability of a liquidated damages clause depends in part on whether there is sufficient evidence to show that prospective damages "were capable of precise estimation at the time the parties executed the Agreement."  *JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 385 (N.Y. 2005).[10]  Thus, to determine the legality of the

---

a new trial.  *See Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994).  However, a new trial is only appropriate if the jury verdict is not supported by *any* evidence.  *Id.*  In any event, Staffing 360 has not argued that the alleged illegality of the liquidated damages clause requires a new trial.

[10] Although it is true under New York law that "[w]hether a provision in an agreement is an enforceable liquidation of damages or an unenforceable penalty is a question of law," this question cannot be answered without "giving due consideration to the nature of the

No. 16-50009

liquidated damages clause, we would need to evaluate the sufficiency of the evidence. Staffing 360 acknowledges that Rule 50's preservation requirement applies to arguments that challenge the sufficiency of the evidence. Therefore, the legality of the liquidated damages clause is not properly before us for decision under Rule 50 or under Rule 8.

**3.**

Even if we were to reach the merits, we would not be persuaded that the liquidated damages clause is unenforceable as a matter of law. Under New York law, which applies here, a true liquidated damages clause is enforceable and functions as "an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (N.Y. 1977). However, a purported liquidated damages clause is an unenforceable penalty if the party seeking to avoid enforcement can demonstrate: (1) the damages that a breach would cause "were readily ascertainable at the time [the parties] entered into their . . . agreement"; or (2) the liquidated damages sum "is conspicuously disproportionate to these foreseeable losses." *JMD Holding*, 4 N.Y.3d at 380.

A clause may also constitute a penalty if it requires "payment of a fixed amount upon a breach of any [contract] provision in that contract, no matter how trivial the breach." *John T. Brady & Co. v. Form-Eze Sys., Inc.*, 623 F.2d 261, 263 (2d Cir. 1980)*; see also Seidlitz v. Auerbach*, 230 N.Y. 167, 171–72 (N.Y. 1920). However, such a clause is enforceable against a defendant who commits a material breach of contract. *Van Duzer*, 24 N.Y.3d at 535; *JMD Holding*, 4 N.Y.3d at 384.

---

contract and the circumstances." *172 Van Duzer Realty Corp. v. Globe Alumni Student Ass'n., Inc.*, 24 N.Y.3d 528, 536 (N.Y. 2014).

13

No. 16-50009

In evaluating whether a clause provides for a penalty, "the agreement should be interpreted as of the date of its making and not as of the date of its breach." *Truck Rent-A-Center*, 41 N.Y.2d at 425.[11] The party seeking to avoid liquidated damages bears the burden of demonstrating that the purported liquidated damages clause in fact establishes a penalty. *Van Duzer*, 24 N.Y.3d at 536. If the party can show that the clause establishes a penalty, recovery will be limited to the amount of actual damages. *Id.*

Staffing 360 argues that the damages NewCSI would suffer if Staffing 360 failed to pay it fifty percent of CSI's Deferred Tax Benefit as of closing were readily ascertainable at the time the contract was entered. Staffing 360 also argues that its failure to pay fifty percent of CSI's Deferred Tax Benefit has no relevance to the value of future earn-out payments, making acceleration of $1,306,576 in earn-out payments grossly disproportionate to the $154,433 in damages that such a breach could foreseeably cause. Both arguments assume the parties' knowledge of the specific breach that would occur.

The liquidated damages clause must be evaluated in light of the knowledge available to the parties at the time of the agreement, and the parties had no knowledge of how Staffing 360 would later breach the contract. *See Truck Rent-A-Center*, 41 N.Y.2d at 425. At the time they entered the agreement, the parties could not have ascertained the damages that an

---

[11] This principle sheds light on the meaning of the statement, "It is plain that a provision which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable." *Truck Rent-a-Center*, 41 N.Y.2d at 424. The hypothetical language of this sentence indicates that the damages in question are the damages that would foreseeably take place "in the event of contractual breach." *See id.* Thus, the New York Court of Appeals focused on the damages that the parties could anticipate at the time of the contract. *Id.* at 425–26. These facts, combined with the court's express affirmation that the validity of a liquidated damages clause is evaluated at the time of the agreement, demonstrate that whether a clause constitutes a penalty does not depend on an after-the-fact evaluation of the damages that resulted from breach.

14

Adjustment Event would cause because the liquidated damages clause was to be triggered by *any* breach.  Nor could they have known whether accelerated earn-out payments would be disproportionate to the impact that an unspecified breach would have on future earn-out payments.  However, they could foresee that no breach would cause NewCSI to lose more than the contractually specified maximum value of earn-out payments.  Thus, they agreed to accelerated payment of a portion of the earn-out in the event of breach.  Particularly in light of the fact that the clause was negotiated by sophisticated commercial parties, the liquidated damages amount that it fixes "does not seem to be a sum plainly disproportionate to the *possible* loss." *JMD Holding*, 4 N.Y.3d at 382–83 (emphasis added).  Staffing 360's two main arguments fail because the acceleration clause is triggered by any breach and the parties could not tell at the time of the agreement what breach would occur.

Staffing 360 argues that this very feature makes the acceleration clause vulnerable to attack as a violation of the rule against liquidated damages provisions triggered by trivial breaches.  However, this rule does not prevent enforcement of a liquidated damages clause against a defendant who committed a material breach of contract, as the jury determined that Staffing 360 did here. *See Van Duzer*, 24 N.Y.3d at 535; *JMD Holding*, 4 N.Y.3d at 384.  Accordingly, Staffing 360 has not satisfied its burden of demonstrating that the liquidated damages clause provides for an illegal penalty.

## B.

Staffing 360's challenge to the amount of the liquidated damages award fares no better than its challenge to the validity of the liquidated damages clause.  The stock purchase agreement provided that "upon the occurrence of an Adjustment Event," such as any breach by Staffing 360, Staffing 360 would pay NewCSI "$1.4 million less the amount of any Earn Out previously paid." Accordingly, the district court credited Staffing 360 for all earn-out payments

paid prior to the occurrence of the adjustment event.  Staffing 360 argued in a Rule 60(a) motion that the district court should also have credited it for payments made between the time that it triggered the liquidated damages clause and the time that the judgment was entered.  It renews that argument here.

We review the district court's denial of a Rule 60 motion for abuse of discretion.  *Isbell Records, Inc. v. DM Records, Inc.*, 774 F.3d 859, 869 (5th Cir. 2014).  A Rule 60(a) motion is appropriate "where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another."  *Matter of W. Tex. Mktg. Corp.*, 12 F.3d 497, 503 (5th Cir. 1994).  Rule 60(a) does not confer "a perpetual right to apply different legal rules or different factual analyses to a case."  *Id.* at 505.  Thus, the error addressed by a proper Rule 60(a) motion "must not be one of judgment or even of misidentification, but merely of recitation."  *Id.* at 503.

Staffing 360's Rule 60(a) motion did not properly raise its objection to the district court's calculation of liquidated damages.  It urged the district court to change its substantive interpretation of the stock purchase agreement rather than drawing the court's attention to a true clerical error.  Accordingly, the district court did not abuse its discretion in denying Staffing 360's motion.  *See id.*

Moreover, Staffing 360's position that it should be credited for earn-out payments made after its breach of contract is inconsistent with the language of the stock purchase agreement.  The agreement creates an obligation to pay liquidated damages "upon the occurrence of an adjustment event" and does not provide for that obligation to be modified by subsequent events.[12]  Staffing

---

[12] We also note that the stock purchase agreement expressly contemplates the continuation of earn-out payments after a payment of liquidated damages and limits Staffing

360's own counsel acknowledged to the district court that the liquidated damages clause required the payment of "1.4 million minus earn-out paid through the date of breach."  Because the district court's calculation of liquidated damages is supported by the language of the stock purchase agreement, Staffing 360's challenge to the amount of the liquidated damages award fails.

## IV.

When a defendant objects to a jury note response, we treat the response as a jury instruction and review it for abuse of discretion, subject to harmless error analysis.  *United States v. Ramos-Cardenas*, 524 F.3d 600, 610 (5th Cir. 2008).  A district court abuses its discretion when its ruling is based on an erroneous view of the law.  *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010).  An erroneous instruction is harmless unless the party challenging it can "demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."  *Reyes-Mata v. IBP, Inc.*, 299 F.3d 504, 506 (5th Cir. 2002).  Thus, "erroneous jury instructions will not require reversal if based upon the entire record the challenged instruction could not have affected the outcome of the case."  *Id.*  However, "if two instructions are in direct conflict and one is obviously prejudicial, there is reversible error."  *United States v. Greer*, 939 F.2d 1076, 1089 (5th Cir. 1991).

Staffing 360 argues that the district court abused its discretion when it answered a jury note that asked whether a finding of breach would trigger liquidated damages by instructing the jury not to consider the result of its determinations.  Staffing 360 argues that this instruction was based on an

360's liability by counting the liquidated damages payment toward the $2.1 million cap on earn-out payments.

erroneous view of the law because, in its view, "a jury is entitled to know what effect its decision will have." *See Porche v. Gulf Miss. Marine Corp.*, 390 F. Supp. 624, 632 (E.D. La. 1975) (Rubin, J.). According to Staffing 360, the district court's failure to tell the jury that a finding of breach would trigger liquidated damages constitutes harmful error because it contradicted an earlier instruction to consider the extent to which Staffing 360 would suffer forfeiture as a factor in determining whether the company committed a material breach. Staffing 360 suggests that the jury may have found there was no material breach if it had considered the fact that finding a material breach would result in liquidated damages because liquidated damages constitute a forfeiture.

Staffing 360 has not shown that the jury instruction was based on a misunderstanding of the law. Although we have held that federal courts are permitted to tell juries the effect of their answers and have favorably cited an opinion holding that a jury is entitled to know the effect of its answers, we have never held that courts are required to allow juries to know the consequences of their findings.[13] Thus, we cannot say that the district court abused its discretion here.

Even assuming *arguendo* that the district court did abuse its discretion, any error in its instruction was not harmful under the circumstances. Staffing 360 asked the court to instruct the jury that a finding of breach would trigger liquidated damages, on the theory that: (1) if the jury found a material breach,

---

[13] *Martin v. Texaco, Inc.*, 726 F.2d 207, 216 (5th Cir. 1984) (citing *Porche*, 390 F. Supp. at 632); *see also Vinieris v. Byzantine Mar. Corp.*, 731 F.2d 1061, 1065 (2d Cir. 1984) (stating that a jury should know the large financial stakes in a case, at least when this is relevant to a party's credibility); *Porche*, 390 F. Supp. at 632 (citing C. Wright, *Law of Federal Courts*, § 94 (1970)) ("The jury is not to be set loose in a maze of factual questions, to be answered without intelligent awareness of the consequences."); *accord* 9B Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2503 (3d ed. 2017).

liquidated damages would result; (2) if liquidated damages would result, there would be a forfeiture; and (3) if there would be a forfeiture, the jury likely should not find a material breach.[14]  But an award of liquidated damages in this case would not have constituted a forfeiture in any relevant sense because it would not have caused Staffing 360 to lose the benefit of the contract after relying on it through substantial preparation or performance.  *See* Restatement (Second) of Contracts § 241, cmt. (d) (1981).[15]  Accordingly, the fact that a finding of breach would trigger liquidated damages was not relevant to the jury's determination that Staffing 360 committed a material breach. Moreover, Staffing 360's chain of reasoning leads to the conclusion that if a jury finds material breach in a case involving liquidated damages, it likely should not find material breach.  This odd conclusion would establish a presumption against the enforcement of liquidated damages clauses and would therefore be contrary to New York law, which places the burden of proof on the party seeking to avoid liquidated damages.  *See Van Duzer*, 24 N.Y.3d at 536. Accordingly, Staffing 360's challenge to the jury instruction fails.

## V.

For these reasons, we AFFIRM the judgment of the district court.

---

[14] We note that the jury asked about the possibility of liquidated damages in the context of answering the damages question.  There is no indication that the jury thought liquidated damages could be relevant to its finding of material breach.

[15] The court instructed the jury that, in determining whether Staffing 360 had committed a material breach of contract, it should consider the five factors set forth in Section 241 of the Restatement.  Accordingly, Section 241 of the Restatement sheds light on the meaning of the jury instruction and shows that it was not contradicted by the court's further instruction not to consider the possibility of liquidated damages.